UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **OREN SAAR,** individually, and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**PLAZA MOTORS, LLC,** a New York company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Oren Saar ("Plaintiff Saar" or "Saar") brings this Class Action Complaint and Demand for Jury Trial against Defendant Plaza Motors, LLC d/b/a Plaza Auto Mall ("Defendant" or "Plaza Auto Mall") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the national Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Saar, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

1

## PARTIES

1. Plaintiff Saar is a resident of Brooklyn, New York.

2. Defendant Plaza Auto Mall is a company registered in New York, with its headquarters located in Brooklyn, New York. Defendant Plaza Auto Mall conducts business throughout this District and throughout New York.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.0 billion robocalls were placed in February 2024 alone, at a rate of 137.2 million per day. www.robocallindex.com (last visited March 3, 2024).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Plaza Motors, LLC operates using the name Plaza Auto Mall.[3]

14. Plaza Motors, LLC also operates using the name Plaza Honda.[4]

15. Plaza Auto Mall is a combination of car dealerships that includes Plaza Honda, a dealership that sells new and used Honda vehicles, and provides parts and servicing.[5]

16. Plaza Auto Mall places solicitation calls to generate vehicle sales for its dealerships, including Plaza Honda.

17. Current and former Plaza Auto Mall employees have listed cold calling in their Linkedin job descriptions, including:

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://apps.dos.ny.gov/publicInquiry/AssumedNameHistory
[4] Id.
[5] https://www.linkedin.com/company/plaza-auto-mall/about/

4



Ilya Vaysberg
Property Manager at New York Foundation For Senior Citizens

**Sales And Leasing Consultant**
Plaza Auto Mall
Aug 2016 - Dec 2016 · 5 mos
Brooklyn, NY

-Successfully developed sales strategy in order to manage time wisely and assist customers in a higher professional courteous manner.
-Demonstrate features and options on all vehicles in inventory
-Answer basic questions about financing and other optional financial products
-Promote the company's service and finance department with buyers to ensure customer loyalty
-Perform vehicle delivery for buyers after a purchase has been completed
-Routinely follow up with buyers to ensure continued satisfaction
-Contribute to dealership sales data by filling out standard reports
-Cold call prospective buyers to generate new business when necessary [6]

Keisha Fequiere
Business Development Manager at Plaza Auto Mall

**Business Development Manager**
Plaza Auto Mall
Nov 2017 - Present · 6 yrs 5 mos
Brooklyn, NY

Worked with existing customers to increase purchases of products and services. Established relationships with key decision-makers within customer's organization to promote growth and retention. Coordinated innovative strategies to accomplish objectives and boost long-term profitability. Prospected hundreds of new weekly leads with diverse strategies, including cold calling, site visits and customer referrals. [7]

18. Plaza Auto Mall references data mining and prospecting, as well as telemarketing in job posts for a Business Development Consultant/Internet Sales:

---

[6] https://www.linkedin.com/in/ilya-vaysberg-621121b4/
[7] https://www.linkedin.com/in/keisha-fequiere-72469470/

5

> **Plaza Auto Mall**
> Business Development Consultant/Internet Sales $50,000 plus potential
>
> Brooklyn, NY
>
> **WHAT ARE THE DAY-TO-DAY RESPONSIBILITIES?**
> - Handle customer contacts, follow-up, new business development, and existing customer retention
> - Receiving and promptly responding to inbound sales calls and internet inquiries
> - Identifying client needs and scheduling appointments for the sales and service department
> - <u>Placing outbound phone calls and emails to potential and existing clientele</u>
> - Ensuring client concerns are addressed prior to appointment date such as vehicle pricing, product availability, vehicle
> - Contacting clients prior to appointment date to confirm appointments
> - <u>Data mining and prospecting for sales and service opportunities</u>
> - Execute prospect follow-up calls, and gauge customer satisfaction
> - Attending and participating in department meetings
>
> **WHAT ARE THE REQUIREMENTS FOR THIS JOB?**
> - Customer service, sales, or <u>telemarketing background helpful</u>, but not necessary, we will train you
> - Excellent oral, written and interpersonal communication skills
> - A positive attitude, exceptional work ethic, and a willingness to learn
> - Computer literacy, organization skills, follow-up skills, typing skills
> - Ability to read and comprehend instructions and information
> - Must have a professional appearance

[8]

19. Plaza Auto Mall regularly places unsolicited telemarketing calls to consumer phone numbers, such as that of Plaintiff Saar.

20. Unfortunately, some of these calls from Plaza Auto Mall are being placed to consumers without consent, including to consumers that registered their phone numbers on the DNC, as per Plaintiff's experience.

21. To make matters worse, Plaza Auto Mall lacks a sufficient opt-out system to ensure that a consumer who notifies Plaza Auto Mall to stop calling them will be removed from their calling list.

---

[8] https://www.wayup.com/i-j-Plaza-Auto-Mall-613392014308243/

22. In response to these calls, Plaintiff Saar brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF SAAR'S ALLEGATIONS

23. Plaintiff Saar is the sole owner and user of his cell phone number ending in 2935.

24. Plaintiff Saar registered his cell phone number on the DNC on October 22, 2013.

25. Plaintiff Saar uses his cell phone number for personal use only as one would use a landline telephone number in a home.

26. Plaintiff Saar has never had his cell phone number associated with a business.

27. Plaintiff Saar pays for his cell phone personally. It is not reimbursed by a business.

28. The calls that Plaintiff Saar received from Defendant Plaza Auto Mall were all received more than 31 days after the Plaintiff registered his cell phone number on the DNC.

29. On February 17, 2020, Plaintiff Saar purchased a vehicle from Plaza Honda.

30. When Plaintiff Saar purchased the vehicle, he signed documents on a computer that did not make it evident that he was agreeing to an arbitration clause. The clause was hidden from Plaintiff's view.

31. Plaintiff Saar reviewed the signed documents whereupon he discovered the arbitration clause.

32. Plaintiff sent an arbitration opt out letter to Honda Financial Services on February 29, 2020, well within the required 15 days that Honda requires as stated in the arbitration agreement:

> "Opt Out: If you would like to opt out of arbitration, you may send us a written notice of opt out. The notice of opt out must provide your name, a description of the leased vehicle, including vehicle identification number (VIN), and a statement that you want to opt out of the arbitration provision. The written notice must be postmarked **within 15 days of the date of this Lease** and sent to Honda Financial Services, P.O. Box 165007, Irving, TX 75016."[9] (emphasis added)

33. Plaintiff Saar has not done any business with any Plaza Auto Mall entity since July of 2020.

34. Throughout 2023, Plaintiff Saar received unsolicited calls from Plaza Auto Mall to his cell phone every 1-2 months soliciting him to purchase a car from their dealership.

35. Plaintiff Saar told the callers to stop calling when they called.

---

[9] https://www.dropbox.com/s/2norj0ybzn3dv8o/view-contract.pdf?dl=0

36. Plaintiff Saar also emailed and sent letters by mail to Plaza Auto Mall asking for the calls to stop.

37. For example, on August 10, 2023 at 3:03 PM, Plaintiff Saar called Plaza Auto Mall at 347-554-6000.

38. 347-554-6000 is the main contact number for Plaza Honda.[10]

39. Plaintiff Saar was connected to a Plaza Auto Mall employee.

40. Plaintiff Saar explained that he was receiving unsolicited calls and that he was not interested in purchasing a new vehicle.

41. Plaintiff Saar specifically asked for the mailings, emails and calls to stop, explaining that his phone number is registered on the DNC. He was assured that the calls would stop.

42. On November 20, 2023 at 5:30 PM, Plaintiff Saar sent an email to dominick@plazacars.com and scottb@plazacars.com asking for the calls to stop:

> From: **Oren Saar** <​​​​​​​​​​​​​​​>
> Date: Mon, Nov 20, 2023 at 17:30
> Subject: Cease and desist; harassment of Oren Saar
> To: <dominick@plazacars.com>, scottb@plazacars.com <scottb@plazacars.com>
>
> Hello,
>
> I am continually being harassed by your dealership, even after sending you a cease and desist letter. You must stop.
>
> Oren Saar
> -2935
>
> 📄 **Scanned Document.pdf**
> 6313K

---

[10] https://www.plazahonda.com/contact-us/

43. Despite multiple stop requests, Plaintiff Saar received an unsolicited call from Plaza Auto Mall on February 3, 2024 at 10:49 AM to his cell phone from 347-554-6133:



44. When Plaintiff Saar answered his call, an employee stated that they were calling from Plaza Honda. The purpose of the call was to solicit the sale of a new vehicle.

45. Plaintiff Saar told the employee that he has already asked for the calls to stop and asked for his phone number to be removed from Defendant's call list.

46. The unauthorized solicitation telephone calls that Plaintiff Saar received from or on behalf of Defendant Plaza Auto Mall have harmed Plaintiff in

10

the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

47. Seeking redress for these injuries, Plaintiff Saar, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

48. Plaintiff Saar brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Plaza Auto Mall called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Plaza Auto Mall called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling.

49. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons

11

who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Saar anticipates the need to amend the Class definition following appropriate discovery.

50. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

51. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

52. **Adequate Representation**: Plaintiff Saar will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Saar has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Saar and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Saar nor his counsel have any interest adverse to the Classes.

53. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Saar. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the

members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Saar and the Do Not Call Registry Class)**

54. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

55. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

56. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

57. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Saar

and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

58. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Saar and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

59. As a result of Defendant's conduct as alleged herein, Plaintiff Saar and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

60. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Saar and the Internal Do Not Call Class)**

61. Plaintiff repeats and realleges paragraphs 1-53 of this Complaint and incorporates them by reference herein.

62. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any

call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a

telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

63. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/text messages.

64. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

65. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Saar requests a jury trial.

Respectfully Submitted,

**OREN SAAR**, individually and on behalf of all others similarly situated,

DATED this 10th day of March, 2024.

By: /s/ Stefan Coleman
Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
*Pro hac vice motion forthcoming*

*Attorneys for Plaintiff and the putative Classes*